on the fact that this was covered under USERRA. But the fact of the matter is this is a separate issue as to whether or not the conduct in this case was, two things I think are the central arguments. One, was it related to his employment? In other words, was it done by his employer? Because the standard in this case, in Thompson and other cases, is that the right has to arise out of the employment context. Well, what, the government has said we should remand the hostile work environment claim based on retaliation. Well, I appreciate the government's agreement to do that, but I think that there are larger issues at stake here that warrant the court's action. We don't object to the remand, do we? I would prefer that you rule that we're approving our case, but I think that since this rose on a jurisdictional level, I would expect that a remand would be done. Okay, so what are you seeking that's not covered by the remand? The other, the trouble with the board's opinion was that the board, the assumption the board made is that the placement, and this is, since it's in the record as pictures, this is the actual phone. This was what Mr. Kedlinski found with the DEA inscription on it, stuffed in his car. The problem with the board's opinion is on the broader issues of whether or not that can be an act of discrimination or retaliation, the board decided that it couldn't. And it decided that based on two things. One, that it wasn't arising out of the employment context, and two, that the right implicated was a constitutional one, and therefore couldn't be brought as a USERRA-based claim. We think both of those arguments are incorrect. First of all, how can a situation where the perception is, at least, that an employer-generated telephone found in an employee's car is not related to the employment context? It would in fact arising out of the employment. The secondary facts are that Mr. Kedlinski had a pending USERRA appeal. When Mr. Kedlinski was at the DEA for this deposition where this phone was found, he was in the same uniform he sits here today in. So the issue for this court is, can that, is that arising out of the employment context? And we think clearly it is. I mean, the only rationale for installing the telephone would have been to track or to make statements, particularly while he was in the military, or to gather information to help defeat his claim. The secondary issue of calling him in off of military duty to answer questions without really any authority, but simply going to the military and demanding, without proffering pay or anything else, that he leave his service commitment to come over and answer questions also arises from the DEA's employment context. It is the DEA doing these actions. The second issue is, is this materially adverse? The government relies heavily on Cruz, and we recognize that Cruz has some application here, but Cruz was limited to the understanding that in Cruz what was happening is the reservist was asking for greater rights than he would be entitled to under the law. The city had a policy to allow him alternative leave to meet his reserve requirements, which it then took back. I think the Seventh Circuit rightly said, well, if the employer extends a burden that's not required under the law and they withdraw that benefit, then that is not an adverse employment action. But the issue, but the Cruz court also said you rely on Burlington Northern for your context. In other words, that the Title VII analysis in Burlington is what Cruz actually used. So it wasn't what the government was saying that Cruz said that this has to be related to a tangible economic benefit, which is what the government suggests. What Cruz focused on and Burlington focuses on from the Supreme Court, and it's reemphasized in Staub versus Proctor Hospital, a Supreme Court case, is that a materially adverse action within the retaliation context is one that would discourage an employee from coming forward. Would it shield that employee's assertion of a protected right? Yeah, but the statute here says it has to be a benefit of employment, right? Right, but as the court in Montoyer in California found, freedom from a hostile work environment itself is a form of a benefit. Well, there you go. There's the hostile work environment claim that's going to be the subject of the remand. But there's a secondary context to this issue, which is the other aspect of this is not just hostile work environment because the government cites that it has to be severe and pervasive. Actually, it's severe or pervasive under the standard. The question is, is this a cognizable act of retaliation? In other words, is it retaliatory to place a listening device in someone's vehicle, which seemed to be for the intended purpose of gathering information outside the administrative context of the case involved? The board seemed to feel that this was only a constitutional violation, and while I agree with the court's view of this, the circuit court's view of this, remember what the MSPB argued. It said that you couldn't bring this because it didn't say this is part of a retaliatory hostile work environment. It said, in fact, that this doesn't even arise to an issue that can be litigated in any context because it's a constitutional right and therefore cannot implicate any aspect of his employment context. We think that's simply wrong, and the reason is, again, taking the Title VII context out of Burlington, if I am raped in the workplace, that is a form of sexual harassment. It is also a crime. If I have a listening device installed in my car during the context of litigation, that could potentially be a crime as well. It does not mean it's not an aspect of retaliation. It does not mean it's not a materially adverse action that would chill my designation of rights. And remember, the federal circuit in the MSPB appeal came up before the termination. So in the process, what happened is the board said that this can only be- What's the difference between what you want and what the government is willing to give you? Because if the government gives me this, the board will then remand this case and decide that even in the hostile work environment, this cannot be an adverse type of employment action that's not sufficiently material using the Cruz analysis and therefore would end up with basically an exercise in futility. Well, but that's for another day, isn't it? But this court could rule that within the context of this case, this act is a separate act of retaliation and therefore ensure that when the board handles the retaliatory work environment claim, it's operating on the premise of two separate matters. Because again, Your Honors, the point that we are trying to raise here is the issue of whether or not this act in and of itself is material adverse enough to dissuade a member of a protected class from asserting their rights. If we simply go back on the hostile work environment, Judge Dyke, if we simply go back on that, we believe that the board will rule, as the judge did below, that this was not severe or pervasive enough. And the judge made that surmise based on his sense, nowhere in the record, that this was only installed for a short period. The fact of the matter is if we do not- It's up before us now. Didn't the board reject that line of thinking? Yes, they did. They did, but they- So we can't presume that they will adopt it the second time around. Well, they didn't necessarily reject it. I think the bigger issue that we are worried about, which brought this appeal, was the understanding from the board that there is no mechanism to obtain relief because of the act itself. Even if we go back on a hostile work environment claim, if this court doesn't rule that this act is in and of itself material and adverse enough, again, we suspect that what would happen is that that would be an exercise that would end with us losing because the board has already decided in their opinion that this underlying act is not sufficiently severe or not sufficiently material that it cannot form the basis of a claim. So going back on a hostile work environment claim, how can we have a hostile work environment claim if the board has already prejudged the underlying act as sufficiently immaterial and trivial in their view to not allow any sort of remedy? And our fundamental fear is that the combination of the board's action and the federal court's action in terms of the federal government's position in that case will deprive Mr. Kudlinski of any remedy for this. We also think, to be honest, that there is a fundamental... You said the combination with the federal court's ruling. You're talking about the Eastern District of Virginia case? Yes, yes, Your Honor. And where does that stand right now? Right now, we're in discovery in that case. The case survived an initial attack on the pleadings with it. We assume there'll be a summary judgment motion in the argument. But I thought when you said the combination of the two, I thought you were alluding to having been rejected by the court. You haven't been, I take it? No, but the court, the Eastern District is asking the same question. What is the federal circuit going to do? And the reason this case is fractured the way that it is is because how it arose. And again, the fundamental issue that we're trying to get to with the board is not just that there's a hostile work environment claim, but that when an action involves an indirect attack on that employee's safety and security in the workplace, that that is an act of cognizable retaliation that the board should address on that merit alone. And sending this back just for hostile work environment analysis will not address that claim. Our fundamental point is that if I install a listening device in your car and you find it and it has DEA numbers on it and it was done while you were being deposed and you find it in your car and that agency can never decide whether the phone actually belongs to them or not, and it's traced to an employee that's involved in that process, then that is a cognizable act of retaliation because the fundamental precept is that it would dissuade a reasonable employee from asserting their rights. In the real world... Well, maybe they should have drafted the statute so that it didn't have the benefit of employment requirement in it, but it does have that. Well, but Judge, that was added to strengthen the act. Over the last seven years, Congress has strengthened this act six times in favor of employees. The reason that the benefit of employee was added was simply to address the Carter decision. And the fact of the matter, this court ruled long before that that a hostile work environment claim was cognizable. What the court has before it now is the separate issue as to whether a discreet act that is severe enough to dissuade a reasonable worker from asserting their rights is in and of itself an act of retaliation. And that issue needs to be addressed by the court, regardless of whether this is a hostile work environment. Good morning. May it please the court. Do you agree that the government is taking inconsistent positions in the Bivens action in this case? I agree that we are taking a separate position from the Department of Justice, but we are also not bound by the Department of Justice's opinion in this matter, and we just happen to disagree. We believe that this is not something that arose in employment because it was an action designed to affect his personal life. It was designed to listen to his conversations, if true, in his personal car, outside of work. The Department of Justice happens to disagree, but I believe, as counsel stated, the district court actually rejected that notion, at least on a motion to dismiss. So the district court is also willing to entertain this as outside of the employment context or outside of this area. Is there an opinion from the district court on that issue? There was no, but it looks like their motion to dismiss on that issue was rejected without addressing the individual claim. So we believe that we correctly dismissed, for lack of jurisdiction, his claims of discreet acts of discrimination and retaliation, but would like to request a remand because we do believe we erred in adjudicating his claim of a hostile work environment. What do you mean, erred in adjudicating? When the petitioner originally alleged his claims before the board, before the administrative judge, it appears that he was trying to allege that he was subjected to a hostile work environment because of his prior USERA appeals. Throughout his pleadings on multiple occasions, he states he's subjected to a hostile work environment either because of his USERA appeals or due to his USERA appeals. It never states anything about because of his military status. The administrative judge also adjudicated that claim and decided whether or not there was a hostile work environment because of... They didn't consider it as a retaliation claim. He considered it as a retaliation claim. The administrative judge did. The point is that the board did not consider it as a retaliation claim. Yes. The board, in the middle of the adjudication process, somehow misread his petition for and adjudicated it as a hostile work environment because of his military service claim. We admit now that was incorrect. We should have adjudicated it as a hostile work environment because of his prior USERA claims as a retaliation claim. We did not do so, and so we would like to adjudicate that claim again to determine whether or not he sufficiently non-frivolously alleged the existence of a hostile work environment based on his USERA appeal claims. And what's the board's position on that? Right now, the board hasn't actually adjudicated it yet, so I cannot state either way. That would be something for the board to determine first in an opinion after... I mean, can you imagine what obstacle there would be in Mr. Kietlinski being able to pursue that claim below? Well, this opinion doesn't... The administrative judge's opinion, the initial decision, does not actually represent the opinion of the board here, but the administrative judge looked at it from a severity analysis to determine whether or not the allegations were sufficiently severe to create a hostile work environment, such as whether or not he alleged that he talked to anybody, whether there was any actual eavesdropping, how long the eavesdropping went on. And so I imagine the board on remand would analyze that determination to see if that was correct and to see whether or not his allegations sufficiently affected the terms, conditions, and privileges of his employment such that it created a hostile work environment. I guess what I'm wondering is, does the board agree that a hostile work environment theory is a legitimate basis for a retaliation claim under USERRA? And I believe the counsel pointed this out in his brief. The board has never actually addressed whether or not a hostile work environment under the retaliation theory of USERRA actually exists. And so that would be something we need to address as well to state for the first time whether such a claim can be brought. So what I guess I'm wondering is, why wouldn't it be? It certainly seems like it could be. There's nothing within the language of the statute that would prevent it. But that's still a determination for the board to make. And until the board makes that position or makes that determination, I can't first tell you without them making the decision. Should we decide that question before we remand? Well, I don't believe, with all due respect, Your Honor, that would be within the court's authority because the board has not first made a determination on that point. I think it's within our authority when you request a remand to determine whether the remand would serve any purpose or not. You are correct, Your Honor, but I believe the board first needs to make a determination on whether or not such a claim can exist. We don't owe them any Chevron deference on that, do we? Since the board does adjudicate the claims and these claims are brought before the board, I believe there may need to be Chevron deference there. That is certainly something I'm happy to address further in the supplemental briefing if you would like. But I believe because it's something within the purview of the board, it would be something the board is owed deference to. Well, when you say that the board needs to decide this first, are you suggesting there's a Chenery-type problem here with our deciding that question, the question that Judge Dyke referred to? I believe the problem would be within the scope of this court's review because the nature of this court's review is to determine decisions of the board. And officially, the board has made no decisions on this claim. It's a purely legal question, though, this question. So it wouldn't be as if we were adopting a fact-based position that the board had not yet ruled on. Yes, Your Honor, it is a legal question, but I don't think it's a legal question that's actually been decided before the board and therefore may not necessarily be subject to judicial review yet. This court's judicial review is over decisions the board has made, and the board has not made a decision on this claim. If I recall correctly, we have a case that says if you're going to remand something, you can decide whether there's a reason to remand or not and make a legal determination of that issue. I believe you are correct, Your Honor, but I think there's also a case law that says as long as we have a good faith reason for a request, and we certainly believe we do because admittedly, we just made a mistake, and we would like to give the petitioner a fair chance to have all of his claims properly adjudicated. I guess at this point, we lack any real meaningful briefing on this question from the parties, right? Yes, I think so, Your Honor. But moving on to the claims of discrete acts of discrimination, the board, since we are here, will say that we believe we correctly determined that he did not non-frivolously allege a denial of benefit of employment under USERRA because, as we stated, a benefit of employment needs to be one that flows to him as a result of his employment with the DEA. His right to be free from surveillance from the government comes to him from the Fourth Amendment by virtue of just him being present in the United States and does not come from him being employed by the DEA. So the violation of his right to be free from surveillance is not a denial of benefit of employment under USERRA, and so we believe we correctly decided that. So then how would he, or how, in your view, should he pursue that claim? If it's not through what you believe to be this very narrow conception of USERRA, then where does he go? That I can't say. If he did go to the Office of Professional Responsibility... Bivens Act. Excuse me? A Bivens Act. Possibly, and he did bring one of those, and it is pending right now. He also brought it to the Office of Professional Responsibility in his office, or he and his But when it came to wrongdoing, he reported it to authorities and they investigated it. We don't know where he should go. We take no position there. We just say he should not take it to the board. Do you happen to know the outcome of that investigation? The Professional Responsibility investigation? I don't know the final outcome. I don't know if there was a final outcome. I believe he may have eventually been removed as a result of his refusal to participate in that investigation, but that's not in the record here, and so I don't think that should be considered fairly to him. But addressing his point, though, that there is no mechanism to obtain relief, the board, again, I think would just disagree, and that's the nature of the House of Work and Environment claim. Every single, or just about every single claim he cited that addresses monitoring as a possible action, such as Montoya and Black and Colapietro EEOC cases, district cases, court cases, none of which we believe are binding on us, but they all address this as part of a possible House of Work and Environment. It's not necessarily severe enough to bring as an individual discrete action, but it certainly is possible, and it would be for the board to decide whether or not such a claim could be brought as part of a House of Work and Environment. What do you mean it's not severe enough to be brought as an individual action? That sounds like a different test than the one you were arguing for earlier, where you said it's not a benefit of employment, so there's no claim at all, and now you're suggesting that there is a claim if the action is severe enough. Well, what I meant by that, and I apologize, Your Honor, is under the retaliation provision, it does not restrict claims to denial as a benefit of employment. It simply bars discrimination in employment, and so it would seem that if this claim existed in any way at all or was cognizable, it would be part of a discrimination in employment claim under 4311B with a reprisal provision, and under there... I'm sorry, I'm not understanding what you're saying. He's saying, okay, forget about the House of Work and Environment claim, that the retaliatory  Is there such a claim under some circumstances, or is there never such a claim because the right to be free from surveillance is not a benefit of employment? Well, Your Honor, the answer to that question lies in the two separate sections of USERRA. USERRA 4311A bars discrimination or bars denials of benefits of employment based on military service, and that's effectively the discrimination based on military service provision. 4311B bars discrimination in employment because of participation in protected USERRA activities, effectively the retaliation provision. So what we are stating is that, and what the administrative judge initially stated is, if this claim is anything, it is part of discrimination in employment. Yeah, but try to answer my question. Are you saying there is no such thing apart from the hostile work environment claim? There is no such thing as a claim based on surveillance of an employee that does not take place in the workplace. What we are saying is that there is no such thing as a claim of an individual discrete act of discrimination or retaliation. The surveillance would not be materially adverse as an action by itself. I take that back. I'm sorry. Surveillance outside of employment would not be an individual act. But you use materially adverse, and then you get me confused. Because that makes it sound as though if it were materially adverse, there would be a claim. If it were materially adverse within employment, it could be a claim. Within employment? You mean on the grounds of the workplace? Or in some way affecting his employment, whether typically most cases that we've addressed so far have addressed surveillance inside the workplace. Yeah. And so that takes place inside the workplace. We are saying he's being surveilled in his personal life to affect his personal life, and that is not in employment. So that's not discrimination in employment? Yes. As you say. Yes. For purposes of 4311B. Yes. All right. And it doesn't make any difference how material it is. Under the Burlington Northern Standard, which I don't believe has ever actually been applied to USERRA, it's certainly possible that materially adverse action that could dissuade somebody from filing a USERRA appeal in employment could be a cognizant claim of retaliation under 4311B. But again, no one's ever applied. You've got me completely confused. I apologize. Because, I mean, on the one hand, you seem to say there's no claim based on the discrete act, that if you don't have a hostile work environment claim, there's no claim. But then you say there's no claim because it's not material, it's not severe enough. Which is it? Well, if it was severe enough, and I apologize for mixing up the standards for you, Your Honor, if it were sufficiently severe, the severity analysis would apply to possibly hostile work environment analysis, as the administrative judge did. The materially adverse standard comes from Burlington Northern and could be used to support a claim of an individually discrete act of retaliation, provided that it fits the definition of unemployment. What we're stating is that it does not fit the definition of unemployment. I had another question about the board's decision. It seemed like for one claim, one part of the discrimination claim, the board denied it because it concluded that Mr. Kitlinski didn't allege that the alleged act of discrimination was connected to his military status. But then for other claims, the board didn't rely on that theory. And I guess what I was wondering is, is it the board's conclusion that for some claims, Mr. Kitlinski alleged the adverse acts were due to his military status, whereas other things were not due to his military status? In one of his very last pleadings before the administrative judge, before the jurisdictional initial decision was issued, he made one reference to discrimination, which had not existed in any of his prior pleadings. And he didn't state that he was subjected to a hostile work environment. He just stated he's subjected to discrimination and retaliation due to his filing, and retaliatory hostile work environment due to his filing USAREA appeal. Because he referenced discrimination at the very end, the board viewed that as a general claim that he was subjected to, or the placement of the Blackberry was discrimination based on his military service. But because the phrasing he used about the hostile work environment was, I was subjected to a hostile work environment due to my prior USAREA appeals, it also just only used, it applied it, the administrative judge primarily looked at it as a retaliatory hostile work environment claim. But the board is being more lenient toward him and giving him at least a general discrimination claim, or a general discrimination claim. But as we stated, we also believe we did that in error for the discriminatory hostile work environment claim. So if this court has no further questions, I believe our time has expired. Thank you. Mr. Burns, you've got a little over two minutes. I'll be brief. We disagree with some of the facts, whether the Kedlinski's reported. You asked at the outset, Your Honor, what relief we would want. One of the problems with this case is that the board decided all of this, and the administrative law judge decided all of this before any discovery or hearing was done. It would help to understand retaliation, and it would help to understand discrimination, both of which Burlington Northern have said are factually intense issues, if under Kirkendall we had our hearing. So if you're going to remand this, one of the issues that could be remanded is the idea that can't we get the opportunity to establish that this was a materially adverse action directed towards him in his employee status. I do not agree that there is a distinction as to where the employer, the employer, because it's the employer who's doing this, places the surveillance device, whether it's here at DEA headquarters, or whether it went and installed it in his house. It is the intent of the employer that you look at for material adverse actions. Discrimination, and you say our discrimination, is fundamentally about the intent of the employer. The reason Congress passed the statute and made it broadly remedial was to get at the intent of employers who are discriminating and retaliating. I think it is, one of the problems with the way the government is arguing this case is we're getting lost, and the reason we get lost is because the MSPB is arcanely applying technical concepts of law before it ever adjudicates a factual predicate. Discrimination has to be done through a factually intensive mechanism. Even Cruz, the case they rely upon, was summary judgment. There were facts that were presented. There were people that were deposed. This is in effect a summary judgment before we have any factual basis whatsoever to decide the record. The reason we're struggling with ideas of whether this is retaliation or not is because we haven't had any proof, and so lacking proof, how can we prove up things? We're debating with the MSPB their conception of a factual record that we disagree with. When they say the Kedlinskis went to OPR, we believe that's untrue, and we are litigating that fact. The MSPB both decides the law, like the ALJ, and it decides the facts. The ALJ had all sorts of factual issues in this case that were nowhere proven by any record because we never got a hearing. If we are going to remand this case, Your Honors, it should be remanded on all of the issues so that we get the opportunity to present our case. That's what Mr. Kedlinski wants, and that's what he needs. Thank you.